FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR -9 PM 4:58

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARLO J. JONES | CIVIL ACTION |
| VERSUS | NUMBER: 05-620 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION: "C"(5) |

### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based on disability. (Rec. docs. 10, 11).

Carlo J. Jones, plaintiff herein, filed the subject applications for DIB and SSI benefits on March 21 and March 27, 2003, respectively, with a protective filing date of February 26, 2003, alleging disability as of April 17, 2002. (Tr. pp. 45-47,

461-463, 44).[1]/ In a Disability Report completed by plaintiff on March 12, 2003, he identified severe head pain, occasional blindness, severe depression, Type II diabetes, chronic sinusitis, pseudomonas (cancerous), fungus, bacteria, and memory loss as the conditions resulting in his inability to work. (Tr. pp. 57-66). Those conditions first began bothering plaintiff on June 1, 1981 and ultimately rendered him unable to work on April 17, 2002. (Id.).

Plaintiff's applications for Social Security benefits were denied at the initial step of the Commissioner's administrative review process on August 14, 2003. (Tr. pp. 29-33). Pursuant to plaintiff's request, a hearing de novo before an Administrative Law Judge ("ALJ") went forward on July 7, 2004 at which plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 34-35, 471-493). On September 17, 2004, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 11-21). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the

---

[1]/ It appears that plaintiff had filed a previous application for DIB that was denied at the initial level on September 25, 2002 and was not appealed further. (Tr. pp. 67-69).

Commissioner. (Tr. pp. 6-8). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his cross-motion for summary judgment, plaintiff frames the issue for judicial review as follows:

> [t]he ALJ committed a reversible error of law by failing to consider the medical opinion of plaintiff's treating physician, Dr. Canale, in assessing credibility and RFC.
>
> (Rec. doc. 10, p. 7).

Relevant to the issue to be decided by the Court are the following findings made by the ALJ:

1. [t]he claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. [t]he claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. [t]he claimant has medically determinable impairments of chronic sinusitis and chronic pain, status post multiple surgeries, which are "severe" impairments, based upon the requirements in the Regulations (20 CFR §§404.1520 and 416.920).

4. [t]hese medically determinable impairments do not meet or medically equally one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. [t]he undersigned finds the claimant's allegations regarding his limitations are not entirely credible for the reasons set forth in the body of the

decision.

6. [t]he claimant retains the residual functional capacity to occasionally lift and carry up to 20 pounds; to frequently lift and carry up to 10 pounds; to sit for up to 6 hours of an 8-hour workday; and to stand and walk for up to 6 hours of an 8-hour workday. The claimant can only occasionally climb, bend, stoop, crouch or crawl; should avoid concentrated exposure [to] fumes, odors, dust, gases, and poor ventilation as a condition of employment at the worksite; should not work at unprotected heights or around hazardous machinery or at more than a moderate or average pace (must avoid fast-paced work). Further, the claimant should work primarily with things and not people, or in groups of people, although one-on-one and 1-2 people minimal working in the vicinity is all right.

7. [t]he claimant's past relevant work as a dispatcher (sedentary, semiskilled) a budget rental agent, (light, semiskilled), and a probation officer (sedentary, skilled) did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§404.1565 and 416.965).

8. [t]he claimant's medically determinable "severe" impairments of chronic sinusitis and chronic pain, status post multiple surgeries do not prevent the claimant from performing his past relevant work.

9. [t]he claimant was not under a "disability' as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§404.1520(e) and 416.920(e)).

(Tr. p. 20).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the

4

Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

    1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

    2. an individual who does not have a "severe impairment" will not be found to be disabled.

    3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

    4. if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

    5. if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must

ultimately demonstrate that he is unable to perform the work that he has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). In determining whether a claimant is capable of performing the work that he has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. Villa, 895 F.2d at 1022; Hollis v. Bowen, 837 F.2d 1378, 1386 (5th Cir. 1988); Epps v. Harris, 624 F.2d 1267, 1274 (5th Cir. 1980). A finding that the claimant is disabled or is not disabled at any point in the five-step review process is conclusive and terminates the Commissioner's analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

At the time of the administrative hearing held on July 7, 2004, plaintiff was forty-one years of age, held a B.S. degree in criminal justice, and had also taken some computer training and management courses. He was living with his cousin at the time, having been out of work for some time and being largely inpecunious. Plaintiff testified to a history of sinus problems since his childhood years, having undergone sixteen surgeries in his lifetime, three since stopping work in April of 2002. He described his sinus condition as an antibiotic resistant fungal infection and plaintiff had been on antibiotics, including IV antibiotics, for the previous two years. As a consequence of his

multiple surgeries, plaintiff suffered from nerve damage and constant headaches, the pain being, on a scale of 1 to 10, 5.5 to 6.0 on good days to 10+ on bad days even with prescribed medication. Plaintiff currently saw Dr. DeFrancesch for pain management and he had been addicted to and detox'd from Oxycontin on two occasions. He presently used Duragesic patches and Actiq lozenges for pain relief which made him off-balanced and lethargic to the point where he spent the bulk of the day sleeping. Plaintiff was depressed, isolated, and withdrawn as a result of his condition, he did no household chores or shopping, and spent most of his time in his bedroom, leaving home only to attend doctors' appointments or to meet with his attorney. Hyperbaric treatment had been discussed by Dr. Denali but the prognosis was reportedly surgery every year or two for the remainder of plaintiff's life. (Tr. pp. 475-485).

Katrina Virden, the VE, was next to take the stand. After eliciting testimony from Virden as to her qualifications, the ALJ posed a hypothetical question to her which assumed an individual of plaintiff's age, education, and work experience who could lift twenty pounds occasionally and ten pounds frequently; who could occasionally climb and perform various other postural maneuvers; who was to avoid noxious fumes and airborne irritants; who was to avoid work at unprotected heights and around dangerous machinery;

who could work at a moderate pace; and, who required work around a minimal number of people. In answer thereto, the VE testified that the described individual could perform plaintiff's past work as a dispatcher (sedentary, unskilled), a rental car agent (light, semi-skilled), or probation officer (sedentary, skilled). To the hypothetical question as originally framed, the ALJ added repetitive work absences, for whatever reason. In answer to the hypothet as amended, the VE testified that the described individual would be subject to termination, particularly if he could not work for forty hours per week on a consistent basis. Upon being tendered to plaintiff's counsel for further questioning, the VE testified that individuals taking pain medication such as morphine on a regular basis are not employable due to their inability to pass any required employment-related drug tests and, notably, the sleepiness the drugs would cause. (Tr. pp. 485-493).

As noted earlier, plaintiff challenges the Commissioner's decision to deny Social Security benefits on one ground, namely, that the ALJ failed to consider one of the narrative reports issued by one of his treating physicians, Dr. Canale, thereby resulting in an improper evaluation of plaintiff's credibility and a flawed assessment of his residual functional capacity. The two-paged narrative report of Dr. Canale, written at the behest of plaintiff's counsel, reads as follows:

Carlo Jones is a 41-one-year African American male who has been a patient of mine since he was a teenager. He has suffered with major purulent sinus infections in all of his paranasal sinuses over the years. This has resulted in multiple, major sinus surgeries (more than 12 major operations). His most recent operation was in March 2004, performed by myself and Dr. Michael Hickham.

The result of all of these surgeries and the chronic disease has left him with severe pain and headache for which he is under management by specialists in pain medicine. We feel that this severe pain is related to neurologic damage from the multiple operations that he has undergone.

In view of the major amount of medicine that is required to relieve his pain, I would consider him disabled at this stage.

In reference to your letter of May 28, 2004, I will attempt to answer the questions in the order that you have asked them:
1. Mr. Jones' medical diagnosis is chronic purulent pansinusitis with nasal polyps. There is a also a diagnosis of headache and severe pain, felt to be neurologic in nature. The medical findings are evident by the previous multiple major sinus operations and the pathology reports. I have included some of those with this report.
2. Mr. Jones has undergone major sinus surgery at least a dozen times. The last operation was on March 24, 2004, and a copy is included for your records. His sinus disease is currently under control, but the long-term prognosis is not good in view of the past history of the disease recurring. He is still under a major pain management by pain specialists.
3. The symptoms have been nasal blockage,

> purulent drainage, persistent headache and facial pain. These symptoms have been very severe in the past, and the pain and headache persist to this day.
>
> In view of the persistent headaches and pain, it would be my opinion that this would affect his ability to sustain meaningful employment. I would suggest a consultation with his pain management specialist for a more specific recommendation relative to this. I would anticipate long-term follow-up relative to his chronic sinus disease, and I am concerned that the disease will recur and be a continuing problem for him in the future.
>
> If I can be of any further assistance, please do not hesitate to call.

(Tr. pp. 439A-440).

The foregoing narrative report was nowhere mentioned in the ALJ's written opinion.

The Court is not unmindful of the fact that the ALJ is not bound by the conclusions of treating physicians as to whether or not an individual is disabled as that ultimate issue, as well as the assessment of an individual's residual functional capacity, are determinations entrusted to the Commissioner in the first instance. 20 C.F.R. §§404.1527(e)(1), (f)(2), 404.1546, 416.927(e)(1), (f)(2), 416.946. The Court is also aware that a treating physician's opinions, to be entitled to considerable weight, must be supported by contemporaneously recorded, medically acceptable

findings, <u>Greenspan v. Shalala</u>, 38 F.3d 232, 237 (5th Cir. 1994), <u>cert</u>. <u>denied</u>, 514 U.S. 1120, 115 S.Ct. 1984 (1995), and that the ALJ, in rendering his decision in any given case, is not required to discuss all of the evidence supporting his decision and all the evidence that was rejected. <u>Falco v. Shalala</u>, 27 F.3d 160, 163-64 (5th Cir. 1994). At the same time, the ALJ has a duty to fully and fairly develop the facts related to a claimant's application for Social Security benefits which typically includes a medical source statement describing the types of work activities that the claimant is still capable of performing. <u>Ripley v. Chater</u>, 67 F.3d 552, 557 (5th Cir. 1995).

A review of the record reveals that plaintiff suffers from a long history of chronic sinusitis, with cancerous pseudomonas and resulting chronic headaches, which has required no less than sixteen separate surgical procedures. Throughout the administrative proceedings below, plaintiff has consistently indicated that his pain has had a profound impact on his daily activities, spending the majority of his time isolated in his bedroom. (Tr. pp. 80-84, 340-341, 475-485). At the time of the administrative hearing, plaintiff was using Duragesic patches and Actiq for pain relief. The former drug is indicated for the "... management of chronic pain in patients who require continuous opioid analgesia for pain that cannot be managed by lesser means

such as acetaminophen-opioid combinations, non-steroidal analgesics, or PRN dosing with short-acting opioids." <u>Physicians' Desk Reference</u>, pp. 1731-1735 (59th Ed.). The latter is prescribed "... only for the management of breakthrough cancer pain in patients with malignancies who are **<u>already receiving and who are tolerant to opioid therapy for their underlying persistent cancer pain</u>**." <u>Physicians' Desk Reference</u>, pp. 1122-1126 (59th Ed.)(emphasis in original).

On August 4, 2003, after reviewing the treatment records then extant, an Administration medical consultant determined that plaintiff's symptoms were indeed attributable to a medically determinable impairment, opining as follows:

> [c]laimant alleges as a result of his impairment [that] he is in severe pain and has to take many drugs to function. Claimant has an established MDI of pseudomonas sinusitis, that has been resistant to antibiotics and has required multiple surgeries (15), thus his alleged limitations are fully credible. Current medical evidence reveals claimant is on medication to try and manage his severe pain even to the point [that] he has required detoxification. Current ADL's are limited due to chronic pain and the side effects of medication.

(Tr. p. 362).

Notwithstanding that sobering opinion, the medical consultant then went on to find that plaintiff could perform medium level work while acknowledging that the record was devoid of any statements

from any treating or examining physicians regarding plaintiff's capabilities. (Tr. pp. 358-361, 363).

In Ripley, 67 F.3d at 557, the Fifth Circuit cautioned that the absence of a medical source statement describing the types of work that a claimant can perform does not, in and of itself, render the record incomplete. And caselaw does exist which holds that a non-treating, non-examining medical consultant is a proper "medical source." Oderbert v. Barnhart, 2006 WL 280877 at *3 (E.D. Tex. 2006)(citing Onishea v. Barnhart, 116 Fed.Appx. 1, 2004 WL 1588294 (5th Cir. 2004)). In the final analysis, however, the residual functional capacity assessment must be supported by substantial evidence to withstand judicial review. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).

Unlike the typical Social Security case in which the claimant alleges disability due to a physical impairment, no consultative physical evaluation was ordered by the Commissioner in an effort to determine what activities plaintiff was capable of performing and what effect his condition had on his ability to work. Certainly, the medical consultant did not have the benefit of any such opinions from any of plaintiff's treating or examining physicians. (Tr. p. 363). Although the medical consultant recited various of plaintiff's treatment records in summary fashion, he did not explain precisely how the evidence supported his conclusion.

14

Oderbert, 2006 WL 280877 at *4; Browning v. Barnhart, 2003 WL 1831112 at *7 (E.D. Tex. 2003). Moreover, the medical consultant concluded that plaintiff's "... alleged limitations are fully credible." If the consultant was referring to the limitations plaintiff set forth in his Function Report, regular work activity would appear to be precluded. As late as May 12, 2004, Dr. Francesch, plaintiff's pain management specialist, observed that plaintiff was moderately limited even in walking and sitting and that "[a]ll other activities of daily living are severely limited." (Tr. p. 444).

In his written opinion, the ALJ acknowledged that "[the claimant truly has severe pain, supported by the medical evidence; ..." (Tr. p. 18). The ALJ then went on to find that "... there is nothing in the medical records to reflect that with the right combination of medications, the claimant cannot engage in substantial gainful activity." ( Id.). That prediction, if it proves to materialize, would certainly serve plaintiff best but the existing medical records do not bear it out. Unfortunately, the prognosis for plaintiff is further surgery every one to two years and thus far, his doctors' unsuccessful attempts to control his well-documented and established pain have resulted in two hospitalizations for detoxification. Because the ALJ's assessments of plaintiff's subjective complaints and his residual functional

capacity are not supported by substantial evidence, it will be recommended that plaintiff's case be remanded to the Commissioner for an award of Social Security benefits.

### RECOMMENDATION

For the foregoing reasons, it is recommended that defendant's motion for summary judgment be denied, that plaintiff's motion for summary judgment be granted, and that plaintiff's case be remanded to the Commissioner for an award of Social Security benefits.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this 9 day of March, 2006.

                                                             ALMA L. CHASEZ
                                           UNITED STATES MAGISTRATE JUDGE